1   WO

2

3

4

5

6               **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE DISTRICT OF ARIZONA**

8

9   Martin Sanchez-Alaniz,[1]              No. CV-14-00324-TUC-RCC (BGM)

10                     Petitioner,        **REPORT AND RECOMMENDATION**

11

12  v.

13  J. T. Shartle, Warden,

14                     Respondent.

15

16         Currently pending before the Court is Petitioner Martin Sanchez-Alaniz's *pro se*

17  First Amended Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person

18  in Federal Custody ("Petition") (Doc. 18).  Respondent has filed his Return and Answer

19  to Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus and Motion to Dismiss

20  Petition ("Response") (Doc. 38).   Petitioner filed his Reply and Petitioners [sic] Motion

21  for Summary Judgment (Doc. 50).  Also pending before the Court is Petitioner's Motion

22  for Summary Judgment and Motion to Strike (Doc. 51) and Motion for Waiver of Form

23  Requirements (Doc. 58).

24

25

26  _____

27         [1] The Court docket spells Petitioner's name as "Martin Sanchez Alanis;" however,
    the Federal Bureau of Prisons ("BOP") list Petitioner as "Martin Sanchez-Alaniz."  *See*
28  BOP Inmate Locator, *available at* http://www.bop.gov/inmateloc/ (last visited June 10,
    2015).  For consistency with BOP, the Court adopts the latter spelling.

As an initial matter, Petitioner named Craig Apker, Warden of the United States Penitentiary–Tucson ("USP–Tucson") as the Respondent.  *See* Petition (Doc. 18).  The Court takes judicial notice, however, that Craig Apker is no longer warden of USP–Tucson.  As such, the Court will substitute the new Warden of USP–Tucson, J. T. Shartle, as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[2] this matter was referred to Magistrate Judge Macdonald for Report and Recommendation.  The Magistrate Judge recommends that the District Court deny the Petition (Doc. 1).

## I.      PROCEDURAL BACKGROUND

Petitioner is currently incarcerated at USP–Tucson, serving a 108-month sentence for Re-entry of a Deported Alien in violation of 8 U.S.C. § 1326(a) & (b)(2).  *See* Response (Doc. 38), Talplacido Decl. (Exh. "A"), Judgment & Commitment 3/6/2012 (Attach. "2") & Sentence Monitoring Computation Data (Attach. "3").  Petitioner committed the underlying offense which gave rise to his incarceration on July 14, 2011.  *Id.*, Exh. "A," Attach. "2" at 1 & Attach. "3" at 1.  Petitioner's projected release date is October 4, 2019 via Good Conduct Time ("GCT") release.  *Id.*, Exh. "A," Attach. "3" at 1.  Petitioner filed a First Amended Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody on April 21, 2014.  *See* Petition (Doc. 18).

Petitioner challenges a disciplinary conviction that resulted in his loss of good time credits.  Petitioner alleges that "administrative staff has [sic] illegally forfeited [sic]

---

[2] Rules of Practice of the United States District Court for the District of Arizona.

a grand total of 108 days of NONVESTED GOOD TIME CREDITS" in violation of his constitutional rights.   Petition (Doc. 18) at 4.   Petitioner requests this Court order Respondents to return the 108 days of good time credits.   *Id.* at 6.

## II.      FACTUAL BACKGROUND

This matter arises from four (4) separate Incident Reports.   Petitioner seeks relief from the aggregate punishment of those proceedings.   Petitioner instituted the current proceeding on October 25, 2013.   *See* Petition's Writ of Habeas Corpus 28 U.S.C. § 2241 (Doc. 1).

### A.  *Incident Report Number 2322016*

On June 30, 2012 at approximately 5:50 p.m., Correctional Officer ("CO") Derrington was feeding the evening meal in the Special Housing Unit ("SHU"), when Petitioner blocked the food slot and demanded a no egg tray.   Response (Doc. 38), Exh. "A," Incident Report No. 2322016 (Attach. "6") at 4.   CO Derrington ordered Petitioner to allow him to close the food slot, but he refused.   *Id.*   Petitioner then threw his food tray at CO Derrington, who avoided being hit.   *Id.*   Petitioner then used a long piece of metal from the shower stall, put it through the food slot, and knocked the remaining food trays from CO Derrington's cart.   *Id.*   CO Derrington removed the weapon and notified the Operations Lieutenant.   *Id.*   CO Derrington charged Petitioner with the prohibited act of Attempt to Assault Any Person in violation of Code 224A.   Response (Doc. 38), Exh. "A," Attach. "6" at 4.   The following day, Lieutenant L. Williams delivered the incident report to Petitioner.   *Id.*   Lieutenant Williams also investigated the incident and advised

Petitioner of his rights. *Id.*, Exh. "A," Attach. "6" at 5. During Lieutenant Williams's investigation, Petitioner stated that "they were trying to give me Spaghetti as the meal and I do not eat eggs." *Id.* Petitioner did not request any witnesses. *Id.* Lieutenant Williams forwarded the Incident Report to the Unit Discipline Committee ("UDC") for further disposition. *Id.*

On July 5, 2012, the UDC conducted its hearing. Response (Doc. 38), Exh. "A," Attach. "6" at 6.[3] At the hearing, Petitioner was advised of his rights, and stated that he understood those rights. *Id.* Petitioner's only statement was "no comment." *Id.* Based on the severity of the alleged misconduct, the UDC referred the matter to the Discipline Hearing Officer ("DHO") for final disposition, and if Petitioner was found guilty, recommended sanctions including loss of Good Conduct Time ("GCT"), loss of telephone privileges, and loss of commissary privileges. *Id.* The UDC also provided Petitioner with a Notice of Discipline Hearing Before the DHO and his rights at that hearing. *Id.*, Exh. "A," Attach. "6" at 7–8. Petitioner indicated that he wished to have a staff representative, as well as a witness at his DHO hearing. *Id.*, Exh. "A," Attach. "6" at 8. Later, Petitioner apparently signed a statement indicating that he had decided against utilizing a staff representative at the DHO hearing. *Id.*, Exh. "A," Attach. "6" at 8–9.

On October 10, 2012, Petitioner had a DHO hearing before DHO A. Truex. *See* Response (Doc. 38), Exh. "A," DHO Report for Incident Report No. 2322016 (Attach.

---

[3] The typewritten date on Part II of Incident Report No. 2322016 is July 5, 2011, but all other dates associated with this portion of the incident were dated 2012. The Court finds that the 2011 date was a typographical error.

"6") at 1–3.  DHO Truex noted that on July 5, 2012, Counselor H. Preston had advised Petitioner of his rights before the DHO, and he indicated that he understood them.  *Id.*, Exh. "A," Attach. "6" at 1.  Petitioner waived his right to a staff representative at the DHO hearing.  *Id.*  Petitioner also waived his requested witnesses, stated that he understood his rights before the DHO, and "admitted guilt to attempting to assault an officer by throwing the lid to his food tray at him."  *Id.*  Petitioner declined to make any further statement, and did not submit any documentary evidence.  *Id.*

DHO Truex considered the Incident Report; Petitioner's admission at the DHO hearing to committing the offense; and Petitioner's silence during the investigation and before the UDC, drawing an adverse inference therefrom.  Response (Doc. 38), Exh. "A," Attach. "6" at 2.  DHO Truex also noted that upon commitment to the BOP, Petitioner participated in the Admission and Orientation ("A&O") program, and was advised of BOP rules and regulations, as well as provided an A&O handbook.  *Id.*  Accordingly, DHO Truex determined sufficient facts existed to find Petitioner guilty of the prohibited act of Attempting to Assault Any Person (Code 224A).  *Id.*  DHO Truex imposed sanctions totaling thirty (30) days Disciplinary Segregation, twenty-seven (27) days Disallowance of Good Conduct Time, and ninety (90) days loss of telephone privileges to begin on January 8, 2013, consecutive to Incident Report Number 2341527.  *Id.*  On November 30, 2012, DHO Truex signed the DHO report and it was delivered to Petitioner on December 7, 2012.  *Id.*, Exh. "A," Attach. "6" at 3.

On February 15, 2013, Petitioner filed his Regional Administrative Remedy Appeal regarding Incident Report Number 2322016.  Petition (Doc. 18) at 13.  On March

19, 2013, Petitioner received a denial of his Regional Appeal.  Response (Doc. 38), Attach. "A," Admin. Remedy Index & Copies of Relevant Admin. Remedies (Attach. "7") at 145, 146.  On June 4, 2013, Petitioner filed a Central Office Administrative Remedy Appeal to the Director.  Petition (Doc. 18) at 12.  In his appeal, Petitioner explains that although he received the Regional Director's response on March 19, 2013, he was transferred on March 20, 2013 to USP–Tucson.  *Id.*  The record is unclear as to when Petitioner received his legal papers and other personal property.  A note by Petitioner on an Administrative Remedy Receipt dated February 15, 2013, regarding Incident Report No. 2322016, indicates that Petitioner received the Regional Appeal decision on June 23, 2013.  Response (Doc. 38), Exh. "A," Attach. "7" at 80.[4]  On July 2, 2013, Petitioner resubmitted his Central Office Appeal, which was denied due to Petitioner's failure to include a staff memo excusing the untimeliness on July 5, 2013.  *Id.*, Exh. "A," Attach. "7" at 57.  On September 17, 2013, Petitioner wrote a letter to the Central Office Director indicating that he had been unsuccessfully attempting to obtain a "late memo" from prison staff, and accused BOP of preventing him from exhausting his administrative remedies.  *Id.*, Exh. "A," Attach. "7" at 101.  On March 20, 2014, Unit Manager S. Hansen issued a Memorandum for Administrative Remedy Clerk indicating that Petitioner had arrived at USP–Tucson on December 2, 2013, and received his personal property on or about May 16, 2013.  Petition (Doc. 18) at 7.  On June 23, 2014, Petitioner's Central Office Appeal was accepted.  Response (Doc. 38), Exh. "A," Attach.

---

[4] The February 15, 2013 "Receipt – Administrative Remedy" appears at page 80 of Attachment "7," but the page number of the court's docket is 130.  Except where otherwise noted, this Order refers to the actual page number within an attachment.

"7" at 70.  No response was issued for Petitioner's Central Office Appeal.  Response (Doc. 38) at 7.

### B. Incident Report Number 2323351

On July 4, 2012 at approximately 6:15 p.m., CO K. Luse "was passing out the evening meal on A-2 Range."  Response (Doc. 38), Exh. "A," Incident Report No. 2323351 (Attach. "8") at 4.  When CO Luse attempted to hand the evening meal through the food slot to Petitioner, Petitioner refused and "placed his arm on the food slot preventing it from being closed."  *Id.*  Petitioner stated that the noodles contained eggs, to which he is allergic, and demanded CO Luse call the kitchen.  *Id.*  CO Luse and CO Williamson informed Petitioner that the kitchen had been notified prior to the delivery of the hot food tray, and the food service staff verified that the noodles did not contain any eggs.  *Id.*  Petitioner was ordered to remove his arm from the food, but he refused.  *Id.*  Petitioner became irate and used profanity, and as CO Luse proceeded down the range toward the next cell, Petitioner threw milk, trays, books, and trash in his direction.  Response (Doc. 38), Exh. "A," Attach. "8" at 4.  CO Luse was struck in the upper body by a book thrown by Petitioner through his food slot.  *Id.*  CO Luse charged Petitioner with the prohibited act of Assaulting any Person, Refusing to obey an order of any staff member in violation of Code 224.  *Id.*  The following day, Lieutenant A. Phillips delivered the incident report to Petitioner.  *Id.*  Lieutenant Phillips also investigated the incident and advised Petitioner of his rights.  *Id.*, Exh. "A," Attach. "8" at 5.  During Lieutenant Phillips's investigation, Petitioner stated that he was "throwing items at the food cart trying to knock the food trays off . . . not trying to hit the officer."  *Id.*

Petitioner further stated that "he was trying to get the Officer to get a meal replacement for the spaghetti, stating it is an egg product." *Id.* Lieutenant Phillips forwarded the Incident Report to the UDC for further disposition. *Id.*

On July 6, 2012, the UDC conducted its hearing. Response (Doc. 38), Exh. "A," Attach. "8" at 6. At the hearing, Petitioner was advised of his rights, and acknowledged the same. *Id.* Petitioner's only statement was "no comment." *Id.* Based on the severity of the misconduct, the UDC referred the matter to the DHO for final disposition, and if Petitioner was found guilty, recommended sanctions including loss of GCT, disciplinary segregation, and loss of commissary privileges. *Id.* The UDC also provided Petitioner with a Notice of Discipline Hearing Before the DHO and his rights at that hearing. *Id.*, Exh. "A," Attach. "8" at 7–8. Petitioner indicated that he wished to have a staff representative, but did not request any witnesses, at his DHO hearing. Response (Doc. 38), Exh. "A," Attach. "8" at 8. Later, Petitioner apparently decided against utilizing a staff representative at the DHO hearing. *Id.*, Exh. "A," Attach. "8" at 8–9.

On October 10, 2012, Petitioner had a DHO hearing before DHO A. Truex. *See* Response (Doc. 38), Exh. "A," DHO Report for Incident Report No. 2323351 (Attach. "8") at 1–3. DHO Truex noted that on July 6, 2012, Counselor H. Preston had advised Petitioner of his rights before the DHO. *Id.*, Exh. "A," Attach. "8" at 1. At the DHO hearing, Petitioner indicated that he understood his rights, waived his right to a staff representative at the DHO hearing, and requested no witnesses. *Id.* Petitioner "admitted guilt to assaulting an Officer by throwing a book at him and hitting him in [sic] the upper side of his body." *Id.* Petitioner declined to make any further statement, and did not

submit any documentary evidence.  *Id.*

DHO Truex considered the Incident Report; Petitioner's admission at the DHO hearing to committing the offense; Petitioner's admission during the investigation; and Petitioner's silence before the UDC, drawing an adverse inference therefrom.  *Id.*, Exh. "A," Attach. "8" at 2.  DHO Truex also noted that upon commitment to the BOP, Petitioner participated in the A&O program, and was advised of BOP rules and regulations, as well as provided an A&O handbook.  *Id.*  Accordingly, DHO Truex determined sufficient facts existed to find Petitioner committed the prohibited act of Assaulting Any Person (Code 224).  *Id.*  DHO Truex imposed sanctions totaling thirty (30) days Disciplinary Segregation, twenty-seven (27) days disallowance of GCT, and one hundred twenty (120) days loss of telephone privileges to begin on April 8, 2013, consecutive to Incident Report Numbers 2341527 and 2322016.  *Id.*, Exh. "A," Attach. "8" at 3.  On November 30, 2012, DHO Truex signed the DHO report and it was delivered to Petitioner on December 7, 2012.  *Id.*

On February 15, 2013, Petitioner filed his Regional Administrative Remedy Appeal regarding Incident Report Number 2323351.  Petition (Doc. 18) at 23; *see also* Response (Doc. 38), Exh. "A," Attach. "7" at 52.  Petitioner's Regional Appeal was denied.[5]  Petition (Doc. 18) at 24.  On May 30, 2013, Petitioner filed a Central Office Administrative Remedy Appeal.  Petition (Doc. 18) at 22.  In his appeal, Petitioner

---

[5] Petitioner redacted the date from his Regional Appeal Response, and the copy that appears to match filed by Respondent has a different Regional Administrative Remedy Appeal No. handwritten in, because it appears that the original page was miscopied.  *See* Response (Doc. 38), Exh. "A," Att. "7" at 224.  The Court notes that the signature on each copy appears to match, and Respondent's copy is dated March 7, 2013.

explains that although he received the Regional Director's response on March 19, 2013, he was transferred on March 20, 2013.  *Id.*  On June 5, 2013, Petitioner's Central Office Appeal was denied as untimely.  *Id.* at 21; *see also* Response (Doc. 38), Exh. "A," Attach. "7" at 55.  On August 19, 2013, Petitioner resubmitted his Central Office Appeal, which was denied on August 29, 2013, because it lacked staff verification regarding its untimeliness.  *Id.*, Exh. "A," Attach. "7" at 59.  On September 27, 2013, Petitioner again resubmitted his Central Office Appeal, which was denied on October 17, 2013, because it lacked staff verification regarding its untimeliness.  *Id.*, Exh. "A," Attach. "7" at 60.  On November 12, 2013, Petitioner resubmitted his Central Office Appeal, which was again denied on November 18, 2013, because it lacked staff verification regarding its untimeliness.  *Id.*, Exh. "A," Attach. "7" at 63.  On April 20, 2014, Petitioner resubmitted his Central Office Appeal, with a March 20, 2014 memorandum containing staff verification that his prior untimely submissions were not his fault.  Petition (Doc. 18) at 20.  Petitioner's appeal was rejected, because "photocopies of the first page of [his] BP-11 form [were] not acceptable."  Response (Doc. 38), Exh. "A," Attach. "7" at 66.   On June 23, 2014, Petitioner's Central Office Appeal was accepted.  Response (Doc. 38), Exh. "A," Attach. "7" at 69.  No response was issued.  Response (Doc. 38) at 9.

### C. Incident Report Number 2323375

On July 4, 2012 at approximately 6:15 p.m., CO L. Williamson handed his keys to CO Luse and "proceeded down A-2 range to notify Inmate Sanchez-Alaniz, Martin Reg. #31293-177 what food service said about his dinner meal."  Response (Doc. 38), Exh. "A," Incident Report No. 2323375 (Attach. "9") at 4.   CO Williamson approached

Petitioner's cell # 215, and noted that the food slot was open and Petitioner had his arm resting on the slot.  *Id.*  CO Williamson informed Petitioner "that food service said the dinner meal contained no eggs, [Petitioner] said[,] 'they [sic] are a FUCKING lie and I'm tired of them playing Fucking games."  *Id.*  Petitioner then picked up a Styrofoam cup filled with red liquid and threw it at CO Williamson, striking him on his right shoulder.  *Id.*  CO Williamson notified the Special Housing Lieutenant of the incident.  *Id.*  CO Williamson charged Petitioner with the prohibited act of Assaulting Any Person, Refusing to obey an order of any staff member in violation of Code 224.  Response (Doc. 38), Exh. "A," Attach. "9" at 4.  The following day, Lieutenant A. Phillips delivered the incident report to Petitioner.  *Id.*  Lieutenant Phillips also investigated the incident and advised Petitioner of his rights.  *Id.*, Exh. "A," Attach. "9" at 5.  During Lieutenant Phillips's investigation, Petitioner indicated that he understood his rights, and stated "that he did throw a cup of Kool-Aid on the Officer due to being mad about his meal . . . [and] that he was trying to get the Officer to get a meal replacement for the spaghetti, stating it is an egg product."  *Id.*  Lieutenant Phillips forwarded the Incident Report to the UDC for further disposition.  *Id.*

On July 6, 2012, the UDC conducted its hearing.  Response (Doc. 35), Exh. "A," Attach. "9" at 6.  At the hearing, Petitioner was advised of his rights, and acknowledged the same.  *Id.*  Petitioner's only statement was "no comment."  *Id.*  Based on the severity of the misconduct, the UDC referred the matter to the DHO for final disposition, and if Petitioner was found guilty, recommended sanctions including loss of GCT, disciplinary segregation, and loss of telephone privileges.  *Id.*  The UDC also provided Petitioner with

a Notice of Discipline Hearing Before the DHO and his rights at that hearing.  *Id.*, Exh. "A," Attach. "9" at 7–8.  Petitioner indicated that he wished to have a staff representative at his DHO hearing, but no witnesses.  Response (Doc. 38), Exh. "A," Attach. "9" at 8.  Later, Petitioner apparently decided against utilizing a staff representative at the DHO hearing.  *Id.*, Exh. "A," Attach. "9" at 8–9.

On October 10, 2012, Petitioner had a DHO hearing before DHO A. Truex.  *See* Response (Doc. 35), Exh. "A," DHO Report for Incident Report No. 2323375 (Attach. "9") at 1–3.  DHO Truex noted that on July 6, 2012, Counselor H. Preston had advised Petitioner of his rights before the DHO.  *Id.*, Exh. "A," Attach. "9" at 1.  At the DHO hearing, Petitioner indicated that he understood his rights, waived his right to a staff representative at the DHO hearing, and requested no witnesses.  *Id.*  Petitioner "admitted guilt to assaulting an Officer by throwing a cup filled with red liquid at him and hitting him on his right shoulder."  *Id.*  Petitioner declined to make any further statement, and did not submit any documentary evidence.  *Id.*

DHO Truex considered the Incident Report; Petitioner's admission at the DHO hearing to committing the offense; Petitioner's admission during the investigation; and Petitioner's silence before the UDC, drawing an adverse inference therefrom.  *Id.*, Exh. "A," Attach. "9" at 2.  DHO Truex also noted that upon commitment to the BOP, Petitioner participated in the A&O program, and was advised of BOP rules and regulations, as well as provided an A&O handbook.  *Id.*  Accordingly, DHO Truex determined sufficient facts existed to find Petitioner committed the prohibited act of Assaulting Any Person (Code 224).  *Id.*  DHO Truex imposed sanctions totaling thirty

(30) days Disciplinary Segregation, twenty-seven (27) days disallowance of GCT, and one hundred twenty (120) days loss of telephone privileges to begin on August 6, 2013, consecutive to Incident Report Numbers 2341527, 2322016, and 2323351. *Id.* On November 30, 2012, DHO Truex signed the DHO report and it was delivered to Petitioner on December 7, 2012. *Id.*, Exh. "A," Attach. "9" at 3.

On February 15, 2013, Petitioner filed his Regional Administrative Remedy Appeal regarding Incident Report Number 2323375. Petition (Doc. 18) at 28; *see also* Response (Doc. 38), Exh. "A," Attach. "7" at 52. On March 7, 2013, Petitioner's Regional Appeal was denied. Petition (Doc. 18) at 29; Response (Doc. 38), Exh. "A," Attach. "7" at 218. On May 31, 2013, Petitioner filed a Central Office Administrative Remedy Appeal. Petition (Doc. 18) at 27. In his appeal, Petitioner explains that although he received the Regional Director's response on March 19, 2013, he was transferred on March 20, 2013. *Id.* On July 1, 2013, Petitioner's Central Office Appeal was denied as untimely. Response (Doc. 38), Exh. "A," Attach. "7" at 202. It appears that on July 1, 2013, Petitioner resubmitted the Central Office Appeal, which was rejected on July 3, 2013, reiterating the need to provide staff verification to excuse untimeliness. *Id.*, Exh. "A," Attach. "7" at 57. On August 19, 2013, Petitioner resubmitted his Central Office Appeal, which was denied on August 29, 2013 due to a lack of staff verification regarding the untimeliness. *Id.*, Exh. "A," Attach. "7" at 58, 206. On September 27, 2013, Petitioner again resubmitted his Central Office Appeal, which was denied on October 17, 2013, because it lacked staff verification regarding its untimeliness. *Id.*, Exh. "A," Attach. "7" at 61, 205. On November 12, 2013, Petitioner resubmitted his Central

Office Appeal, which was again denied on November 18, 2013, because it lacked staff verification regarding its untimeliness. *Id.*, Exh. "A," Attach. "7" at 62, 204; *see also* Petition (Doc. 18) at 26. On April 28, 2014, Petitioner resubmitted his Central Office Appeal. Response (Doc. 38), Exh. "A," Attach. "7" at 68. Petitioner's appeal was rejected, because "photocopies of the first page of [his] BP-11 form [were] not acceptable." *Id*. On June 23, 2014, Petitioner's Central Office Appeal was accepted. Response (Doc. 38), Exh. "A," Attach. "7" at 70. No response was issued. Response (Doc. 38) at 11.

### D. Incident Report Number 2341527

On August 20, 2012 at approximately 3:00 p.m., CO J. Shoule was working in the medium security Special Housing Unit ("SHU"). Response (Doc. 38), Exh. "A," Incident Report No. 2341527 (Attach. "10") at 4. Petitioner and Inmate Velasquez were being held in an upstairs holding cell, so that their cell could be searched for contraband. *Id.* After the search, Petitioner and Inmate Velasquez saw contraband that was being removed from their cell, and Petitioner became aggravated, banging the window of the holding cell repeatedly with a food tray, and breaking the sprinkler head, which resulted in flooding the upper and lower levels of the SHU. *Id.* CO Soule notified the SHU Lieutenant, as well as the plumbing shop, in order to turn off the water, and assess the damage. *Id.* CO Soule charged Petitioner with the prohibited act of Destroying Government Property in violation of Code 218. *Id.* The following day, Lieutenant F. Watts delivered the incident report to Petitioner. Response (Doc. 38), Exh. "A," Attach. "10" at 4–5. Lieutenant Watts also investigated the incident and advised Petitioner of his

rights.  *Id.*, Exh. "A," Attach. "10" at 5.  During Lieutenant Watts's investigation, Petitioner stated that he did not do it.  *Id.*  Petitioner did not request any witnesses.  *Id.*  Lieutenant Watts forwarded the incident report for further disposition.  *Id.*

On August 24, 2012, the UDC conducted its hearing.  *Id.*, Exh. "A," Attach. "10" at 6.  At the hearing, Petitioner read his rights, and stated that he understood those rights.  *Id.*  Petitioner stated that "he did not break the sprinkler system. He has hair and his cellmate is bald-headed."  *Id.*  Based on the severity of the alleged misconduct, the UDC referred the matter to the DHO for final disposition, and if Petitioner was found guilty, recommended all appropriate sanctions deemed necessary by the DHO.  *Id.*  The UDC also provided Petitioner with a Notice of Discipline Hearing Before the DHO and his rights at that hearing.  *Id.*, Exh. "A," Attach "10" at 7–8.  Petitioner indicated that he wished to have a staff representative, as well as a witness, Lieutenant Fleming, at his DHO hearing.  *Id.*, Exh. "A," Attach. "10" at 8.  Later, Petitioner apparently decided against utilizing a staff representative at the DHO hearing.  *Id.*

On October 10, 2012, Petitioner had a DHO hearing before DHO A. Truex.  *See* Response (Doc. 38), Exh. "A," DHO Report for Incident Report No. 2341527 (Attach. "10") at 1–3.  DHO Truex noted that on August 21, 2012, Case Manager L. Montgomery had advised Petitioner of his rights before the DHO.  *Id.*, Exh. "A," Attach. "10" at 1.  At the DHO hearing, Petitioner indicated that he understood his rights, waived his right to a staff representative at the DHO hearing, and requested no witnesses.  *Id.*  Petitioner "admitted guilt to breaking a sprinkler head in a Special Housing Unit (SHU) holding cell."  *Id*.  Petitioner declined to make any further statement, and did not submit any

documentary evidence.  *Id.*

DHO Truex considered the Incident Report and Petitioner's admission at the DHO hearing to committing the offense.  *Id.*, Exh. "A," Attach. "10" at 2.  DHO Truex also noted that upon commitment to the BOP, Petitioner participated in the A&O program, and was advised of BOP rules and regulations, as well as provided an A&O handbook. *Id.*  Accordingly, DHO Truex determined sufficient facts existed to find Petitioner committed the prohibited act of Damaging Life-Safety Devices (Sprinkler Head) Regardless of Financial Value (Code 218).  *Id.*  DHO Truex imposed sanctions totaling thirty (30) days Disciplinary Segregation, twenty-seven (27) days disallowance of GCT, and ninety (90) days loss of telephone privileges to begin on October 10, 2012.  *Id.*  On November 30, 2012, DHO Truex signed the DHO report and it was delivered to Petitioner on December 7, 2012.  *Id.*, Exh. "A," Attach. "10" at 3.

On February 15, 2013, Petitioner filed his Regional Administrative Remedy Appeal regarding Incident Report Number 2341527.  Petition (Doc. 18) at 19; *see also* Response (Doc. 38), Exh. "A," Attach. "7" at 52, 230.  On March 7, 2013, Petitioner's Regional Appeal was denied.  Petition (Doc. 18) at 18; Response (Doc. 38), Exh. "A," Attach. "7" at 232, 233.    On May 30, 2013, Petitioner filed a Central Office Administrative Remedy Appeal.  Petition (Doc. 18) at 17; Response (Doc. 38), Exh. "A," Attach. "7" at 54, 219.  In his appeal, Petitioner explains that although he received the Regional Director's response on March 19, 2013, he was transferred on March 20, 2013. Petition (Doc. 18) at 17; Response (Doc. 38), Exh. "A," Attach. "7" at 219.  On June 5, 2013, Petitioner's Central Office Appeal was denied as untimely.  Petition (Doc. 18) at

16; Response (Doc. 38), Exh. "A," Attach. "7" at 54, 227.  It appears that Petitioner resubmitted his Central Office Appeal on May 31, 2013; however, the reason for its rejection are unclear.  Response (Doc. 38), Exh. "A," Attach. "7" at 55.  On August 19, 2013, Petitioner resubmitted his Central Office Appeal, which was denied on August 29, 2013 due to a lack of staff verification regarding the untimeliness.  *Id.*, Exh. "A," Attach. "7" at 59, 239.  On September 27, 2013, Petitioner again resubmitted his Central Office Appeal, which was denied on October 17, 2013, because it lacked staff verification regarding its untimeliness.  *Id.*, Exh. "A," Attach. "7" at 61, 238.  On November 12, 2013, Petitioner resubmitted his Central Office Appeal, which was again denied on November 18, 2013, because it lacked staff verification regarding its untimeliness.  *Id.*, Exh. "A," Attach. "7" at 63, 253.  On April 28, 2014, Petitioner resubmitted his Central Office Appeal.  Response (Doc. 38), Exh. "A," Attach. "7" at 67.  Petitioner's appeal was rejected, because "photocopies of the first page of [his] BP-11 form [were] not acceptable."  *Id*.  On June 23, 2014, Petitioner's Central Office Appeal was accepted.  Response (Doc. 38), Exh. "A," Attach. "7" at 71.  No response was issued.  Response (Doc. 38) at 13.

III.   ANALYSIS

   A.  Jurisdiction

   "Federal courts are always 'under an independent obligation to examine their own jurisdiction,' . . . and a federal court may not entertain an action over which it has no jurisdiction."  *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (quoting

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), *overruled in part on other grounds by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004)). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Id.* at 864. Therefore, a proper characterization of the petition is necessary to a determination of jurisdiction. *Id.*

Here, Petitioner does not claim that the sentencing court imposed an illegal sentence, rather he seeks relief with respect to disciplinary proceedings while incarcerated at a federal facility. As such, Petitioner is challenging the manner, location or condition of the execution of his sentence. *See e.g., Rogers v. United States*, 180 F.3d 349 (1st Cir. 1999) (section 2241 petition is appropriate vehicle to challenge the correctness of a jail-time credit determination, once administrative remedies have been exhausted); *Nettles v. Grounds*, — F.3d — (9th Cir. 2015), (habeas relief is available "if success on the claim would 'necessarily spell speedier release' from custody, which . . . would include termination of custody, acceleration of the future date of release from custody, or reduction of the level of custody.") (citing *Skinner v. Switzer*, 562 U.S. 521, 534–35 & n. 13, 131 S.Ct. 1289, 1299 & n. 13, 179 L.Ed.2d 233 (2011)); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991) (a prisoner's challenge to the "manner in which his sentence was executed . . . [is] maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241"); *Weinstein v. U.S. Parole Comm'n*, 902 F.2d 1451, 1452 (9th Cir. 1990) ("The district court had jurisdiction pursuant to 28 U.S.C. §

2241 to review a claim by a federal prisoner challenging a decision of the United States Parole Commission"); *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989) ("Habeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restrictions of his liberty, such as disciplinary segregation without due process of law").  Such a challenge must be brought pursuant to § 2241 in the custodial court.  At the time of filing the Petition, Petitioner was incarcerated at USP – Tucson in Arizona. Accordingly, this Court has jurisdiction over this matter.  *Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990).

### B.  Exhaustion

#### 1.  **In General**

The Ninth Circuit Court of Appeals has stated:

> [28 U.S.C. § 2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. [Footnote omitted.] However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.

*Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006). "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement."  *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55, 115 S.Ct. 2021, 2023–24, 132 L.Ed.2d 46 (1995).  "Nevertheless, '[p]rudential limits like jurisdictional limits and limits on venue, are ordinarily not optional.'"  *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (alterations in original)

(quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006)).

"Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Id.* (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted). Exhaustion may be excused if pursuing an administrative remedy would be futile. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (citing *Francis*, *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986)). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See Francis*, 894 F.2d at 355 (suggesting that the cause

and prejudice test is the appropriate test); *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 2647–48, 91 L.Ed.2d 397 (1986) (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906–08 (9th Cir. 1986) (cause and prejudice test applied to *pro se* litigants).

### 2.  BOP Administrative Procedures

The BOP has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement."  28 C.F.R. § 542.10(a).  Under that process, an inmate seeking to appeal a DHO decision shall submit the appeal "initially to the Regional Director for the region where the inmate is currently located."  28 C.F.R. § 542.14(d)(2).  "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response."  28 C.F.R. § 542.15(a).  The deadlines contained within this process may be extended upon request by the inmate and a showing of a valid reason for delay.  28 C.F.R. § 542.15(a); 28 C.F.R. § 542.14(b).  An appeal is considered filed on the date it is logged in the Administrative Remedy Index as received.  28 C.F.R. § 542.18.  Once an appeal is filed, a Regional Director shall respond within 30 days; General Counsel shall respond within 40 calendar days.  *Id.*  "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  *Id.*

### 3.  Exhaustion in the Instant Case

Here, Respondent avers that Petitioner has failed to exhaust his administrative

1  remedies.  Response (Doc. 38) at 15.  Respondent acknowledges that Petitioner "believes

2  that he has exhausted his administrative remedies[,]" but asserts that "Petitioner has

3  repeatedly sent administrative remedies to the Central Office without addressing the

4  defects in the remedies[,] [and] [t]he Central Office has not issued a final decision."  *Id*.

5  The Court disagrees with Respondent's assertion.

6       The record shows that on June 23, 2014, each of Petitioner's Central Office

7  Appeals was accepted.  Response (Doc. 38), Exh. "A," Attach. "7" at 69–71.  Moreover,

8  as of November 7, 2014, General Counsel had not responded to any of the appeals.[6]

9  Response (Doc. 38) at 7, 9, 11, 13.  "When a petitioner does not exhaust administrative

10  remedies, a district court ordinarily should either dismiss the petition without prejudice or

11  stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is

12  excused."  *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).  In this case,

13  General Counsel had not responded to Petitioner's BP-11 appeals more than four (4)

14  months after they were accepted.  As such, the Court finds it appropriate to consider "the

15  absence of a response to be a denial at that level[.]"  *See Martin v. Fed. Bureau of

16  Prisons*, 2011 WL 6057608, *2 (C.D. Cal. 2011) ("If General Counsel fails to respond

17  within 40 days, the inmate can assume that the appeal was denied and proceed with a

18  lawsuit").  Additionally, the Ninth Circuit Court of Appeals has recognized that:

> the requirement of exhaustion of remedies [is to] aid judicial review by
> allowing the appropriate development of a factual record in an expert
> forum; conserve the court's time because of the possibility that the relief
> applied for may be granted at the administrative level; and allow the

---

[6] November 7, 2014 is the date that Respondent's Response was originally lodged with the Court.

administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

*Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). In this case, the factual record is adequately developed, and nothing in the record suggests that further administrative review would result in any changes. Accordingly, the Court finds the Petitioner's claims exhausted; however, even if the exhaustion is faulty, it shall be excused and the Court will reach the merits.

### C. Due Process

"Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–66, 94 S.Ct. 2963, 2978–79, 41 L.Ed.2d 935 (1974)). Additionally, "[t]he inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* (citations omitted). "Prison disciplinary proceedings[, however,] are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do[] not apply." *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975.

Once the minimal procedural requirements of *Wolff* are met, the district court must ask "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corrections Inst. v. Hill*, 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). "[T]he requirements of

due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id.* "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* Indeed, "[t]he standard is 'minimally stringent' only requiring 'any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (citing *Hill*, 472 U.S. at 454–56, 105 S.Ct. at 2774) (emphasis added in *Cato*).

### 1.  Good Conduct Time

Petitioner asserts that on October 10, 2013, he was found guilty in four separate disciplinary proceedings, and the DHO forfeited twenty-seven (27) days of regular GCT in each case; however, as of that date Petitioner "had no good time credits available for forfiture [sic], therefore, administrative staff illegally forfitted [sic] NONVESTED GOOD TIME CREDITS."  Petition (Doc. 18) at 4 (emphasis in original). Petitioner further argues that "the DHO is not authorized to forfite [sic] more than 54 days good time credits per calender [sic] year for any 200 series disciplinary case(s) [and] consequently, the DHO can not [sic] forfite [sic] 108 days of regular good time or NONVESTED GOOD TIME in these cases because it exceeds the maximum limit allowed by law." *Id.* (emphasis in original).  Petitioner's contention that there is a fifty-four (54) day annual "limit" on the amount of GCT that an inmate may be disallowed is incorrect.  As such, his claims are without merit and shall be denied.

Section 3625(b), Title 18, of the United States Code governs the timing of federal prisoners' release from custody, including their eligibility for good conduct time.  This

section was enacted as part of the Sentencing Reform Act of 1984, 98 Stat. 1987, 18 U.S.C. § 3551 *et seq.*, 28 U.S.C. §§ 991–998 ("SRA"), "a comprehensive law that reformed federal sentencing practice and directed the newly create United States Sentencing Commission 'to devise guidelines to be used for sentencing' in district courts." *Barber v. Thomas*, 560 U.S. 474, 481–82, 130 S.Ct. 2499, 2505, 177 L.Ed.2d 1 (2010). The SRA was part of the Comprehensive Crime Control Act of 1984 ("CCCA"), which repealed the previous statutes governing "good time." Pub. L. No. 98-473; *see also Brown v. McGrew*, 2013 WL 6512948, * 4 (C.D. Cal. Dec. 12, 2013) (reviewing enactment of 18 U.S.C. § 3624(b) and amendments thereto). "For inmates serving a sentence for offenses committed on or after November 1, 1987, but before September 13, 1994, the Bureau will award 54 days credit toward service of sentence (good conduct time credit) for each year served." 28 C.F.R. § 523.20(a). "This amount is prorated when the time served by the inmate for the sentence during the year is less than a full year." *Id.* "For inmates serving a sentence for offenses committed on or after September 13, 1994, but before April 26, 1996, all yearly awards of good conduct time will vest for inmates who have earned, or are making satisfactory progress . . . toward earning a General Educational Development (GED) credential." 28 C.F.R. § 523.20(b).

On April 26, 1996, Section 3624(b) was amended by the Prison Litigation Reform Act ("PLRA"). *See* PL 104–134, April 26, 1996, 110 Stat 1321. Section 3624(b) provides in relevant part:

> (1) Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of

the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.  Subject to paragraph (2), if the Bureau determines that during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate.  In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree.  Credit that has not been earned may not later be granted.  Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

(2)  Notwithstanding any other law, credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act shall vest on the date the prisoner is released from custody.

18 U.S.C. § 3624(b); *see also* 28 C.F.R. § 523.20(c).  Unlike previous amendments, GCT awarded to an inmate under the PLRA does not vest under any circumstances until "the date the prisoner is released from custody."  18 U.S.C. § 3624(b)(2).  "Thus, under the PLRA, all of a prisoner's cumulative good-conduct time can be taken by the BOP as a sanction for a prison disciplinary action."  *Brown*, 2013 WL 6512948 at *4 (citing 18 U.S.C. § 3624(b)(2); 28 C.F.R. § 523.20(e); *Gary v. Fed. Bureau of Prisons*, 2010 WL 1611020, *8 (E.D. Cal. Apr. 21, 2010).

Here, Petitioner conviction stems from a November 28, 2011 offense.  Response (Doc. 38), Exh. "A," Judgment & Commitment 3/6/2012 (Attach. "2").  As such, the PLRA applies to his sentence.  Each of Petitioner's violations, BOP Code Nos. 224, 224A, and 218, are classified as High Category offenses.  28 C.F.R. § 541.13, Table 3.  The prison can sanction a prisoner who performs a prohibited act by "[d]isallow[ing]

ordinarily between 25 and 50% (14–27 days) of good conduct time credit available for [a] year[.]"  28 C.F.R. § 541.13, Table 3, High Category, Sanctions B.1.  For PLRA inmates committing High Category offenses, Sanction B.1 is mandatory.   28 C.F.R. § 541.13(a)(2).  Pursuant to that regulation, the DHO imposed a sanction disallowing 27 days of GCT for each offense.  Response (Doc. 38), Exh. "A,"  Attach. "6" at 2, Attach "8" at 2, Attach. "9" at 2, Attach. "10" at 2.

Petitioner has not pointed to any rules, regulations or other authority stating that the DHO could not impose Sanction B.1 to disallow more than fifty-four (54) days of GCT in a twelve (12) month period.  As noted by the *Brown* court, "[i]ndeed, such a rule would appear to conflict with the PLRA, which states that good-conduct time does not vest until a prisoner is released from prison, and thus the DHO can sanction a prisoner either by forfeiting good-conduct time that the prisoner has already earned or prospectively disallowing good-conduct time that a prisoner has not yet earned."  *Brown*, 2013 WL 6512948 at *5 (citations omitted); *see also* 18 U.S.C. § 3624(b).  Accordingly, Petitioner's claim must fail.

## 2.  Due Process in Petitioner's Disciplinary Proceedings

Petitioner does not allege any other irregularities in his disciplinary proceedings. The record indicates that in each instance, Petitioner received written notice of the charges; had the opportunity to call witnesses, present documentary evidence, and have a staff representative; and received a statement of the evidence relied on by the prison officials, and the reasons for disciplinary actions.  Furthermore, there is sufficient evidence to support the decision of the DHO.  Accordingly, Petitioner received the

1   requisite due process in his proceedings.

2       ***D. Conclusion***

3       In light of the foregoing, the Court finds that the due process requirements as

4   delineated by *Wolff* were met in this case.  Additionally, the Court finds that the DHO

5   findings were supported by "some evidence" as required by *Hill*.  Petitioner's contention

6   regarding the improper disallowance of GCT is without merit.  Therefore, the Petitioner's

7   Petition (Doc. 18) shall be denied.

8

9

10

11  **IV.   MOTION FOR SUMMARY JUDGMENT**

12

13      Also pending before the Court is Petitioner's Motion for Summary Judgment and

14  Motion to Strike (Doc. 51).  Petitioner's motion for summary judgment is identical to his

15  reply.  As such, if the motion is addressed as a motion for summary judgment on

16  Petitioner's claims, it is unnecessary and procedurally improper.  Habeas proceedings are,

17  by their nature, presumptively summary proceedings. *See* Rules Governing Section 2254

18  Cases, Rule 8 (determination whether hearing required) and Rule 1 (rules applicable to §

19  2241 proceedings).  In light of the Magistrate Judge's determination that the Petition

20  (Doc. 18) is without merit, and because the motion is procedurally duplicative and

21  unnecessary, the Magistrate Judge recommends that the District Judge deny Petitioner's

22  Motion for Summary Judgment (Doc. 51) as moot.

23      Additionally, Petitioner seeks an Order from this Court striking the good time data

24  sheet because it is fraudulent and or falsified.  Petitioner argues *inter alia* that the vested

25  amount and vested date are both blank "because the good time data sheet is fraudulent or

26

27

28

falsified."  Mot. for Summ. J. and Mot. to Strike (Doc. 51) at 5.  This and Petitioner's other contentions regarding the "false" nature of the prison records are based on his misunderstanding of GCT and the prisons ability to forfeit the same under the PLRA. Accordingly, the Court finds Petitioner's arguments regarding BOP falsifying records to be without merit, and his motion to strike should be denied.

## V.     MOTION TO WAIVE FORM REQUIREMENTS

Petitioner has also filed a Motion for Waiver of Form Requirements (Doc. 58), seeking leave to "not comply with the basic form requirements of the federal rules of civil procedure or . . . the local court rules that govern the basic form requirements issued by the court."  Mot. for Waiver of Form Requirements (Doc. 58) at 1.  Petitioner states that he has lost his prescription glasses in transit, and therefore cannot comply with the Court's rules.  *Id.*  The Court has considered all filings made by Petitioner in reaching its decision regarding his Petition, and as such Petitioner's motion is moot.  To the extent that Petitioner seeks to be relieved of responsibility to follow this Court's procedural rules, his motion will be denied.  Petitioner has been able to adequately address his claims throughout this litigation.  If Petitioner requires additional time or other specific accommodation to file objections to this report and recommendation, he appears capable of requesting the same through a motion to the District Court Judge.  As such, Petitioner's Motion for Waiver of Form Requirements (Doc. 58) will be denied.

. . .

. . .

## VI.     RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order:

(1)     SUBSTITUTING J.T. Shartle, Warden, as Respondent for Charles E. Samuels, Jr. pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 43(c)(2) of the Federal Rules of Appellate Procedure;

(2)     DENYING Petitioner's First Amended Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 18);

(3)     DENYING AS MOOT Petitioner's Motion for Summary Judgment (Doc. 51);

(4)     DENYING Petitioner's Motion to Strike (Doc. 51); and

(5)     DENYING Petitioner's Motion for Waiver of Form Requirements (Doc. 58).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  No replies shall be filed unless leave is granted from the District Court.  If objections are filed, the parties should use the following case number:  **CV-14-0324-TUC-RCC**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.  The Clerk of the Court

shall send a copy of this Report and Recommendation to all parties.

Dated this 17th day of June, 2015.

_____
Honorable Bruce G. Macdonald
United States Magistrate Judge